## JACOB SIEGEL CO. *v.* FEDERAL TRADE COMMISSION.

No. 605.   Argued March 4, 1946.—Decided March 25, 1946.

*Robert T. McCracken* argued the cause for petitioner. With him on the brief were *Leo Weinrott* and *C. Russell Phillips.*

*Ralph F. Fuchs* argued the cause for respondent. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Berge, Charles H. Weston* and *W. T. Kelley.*

*Seymour M. Klein* filed a brief on behalf of a group of retail stores, as *amici curiae,* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The alpaca and the vicuna are animals whose fleece is used in the manufacture of fabrics. The fleece of the vicuna is, indeed, one of the finest and is extremely rare; and fabrics made of it command a high price. Petitioner manufactures overcoats and topcoats and markets them under the name Alpacuna. They contain alpaca, mohair, wool, and cotton but no vicuna.

The Federal Trade Commission in proceedings under § 5 of the Federal Trade Commission Act (52 Stat. 111, 15 U. S. C. § 45) found that petitioner had made certain misrepresentations in the marketing of its coats. It found, for example, that the representations that the coats contained imported angora and guanaco were false. It also found that the name Alpacuna is deceptive and misleading to a substantial portion of the purchasing public, because it induces the erroneous belief that the coats contain vicuna. But there was no finding that petitioner had

made representations that Alpacuna in fact contained vicuna. It accordingly issued a cease and desist order [1] which, among other things, banned the use of the word Alpacuna to describe petitioner's coats. 36 F. T. C. 563. The Circuit Court of Appeals affirmed. 150 F. 2d 751. It held that the Commission's findings respecting the use of the name Alpacuna were supported by substantial evidence. It was of the view, however, that the prohibition of the use of the name was far too harsh; and it stated that it would have modified the order to permit Alpacuna to be used with qualifying language had it thought that *Federal Trade Commission* v. *Royal Milling Co.*, 288 U. S. 212, was still a controlling authority. But it concluded that that case had been so limited by subsequent decisions of the Court, involving other administrative agencies, that control of the remedy lay exclusively with the Commission. The case is here on a petition for a writ of certiorari which we granted because of the importance of the question presented.

[1] It ordered petitioner to cease and desist from

"1. Representing that respondent's coats contain guanaco hair.

"2. Representing that the Angora goat hair or mohair used in respondent's coats is imported from Turkestan or any other foreign country.

"3. Representing through the use of drawings or pictorial representations, or in any other manner, that respondent's coats contain fibers or materials which they do not in fact contain.

"4. Representing that coats made of fabrics which have a cotton backing are composed entirely of wool or of wool and hair.

"5. Using any advertising matter or causing, aiding, encouraging, or promoting the use by dealers of any advertising matter which purports to disclose the constituent fibers or materials of coats composed in part of cotton, unless such advertising matter clearly discloses such cotton content along with such other fibers or materials.

"6. Using the word 'Alpacuna,' or any other word which in whole or in part is indicative of the word 'vicuna,' to designate or describe respondent's coats; or otherwise representing, directly or by implication, that respondent's coats contain vicuna fiber."

By the Federal Trade Commission Act Congress made unlawful "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce . . ." § 5 (a). It provided that when the Commission's cease and desist orders were challenged in the courts, the findings of the Commission "as to the facts, if supported by evidence, shall be conclusive." § 5 (c). But it did not limit the reviewing court to an affirmance or reversal of the Commission's order. It gave the court power to modify the order as well.[2]

The power to modify extends to the remedy as *Federal Trade Commission* v. *Royal Milling Co., supra,* indicates. In that case, the Commission barred the use of the words "milling company" since the company, though blending and mixing flour, did not manufacture it. The Court concluded that a less drastic order was adequate for the evil at hand and remanded the case so that the Commission might add appropriate qualifying words which would eliminate any deception lurking in the trade name. On the other hand, the excision of a part of the trade name was sustained in *Federal Trade Commission* v. *Algoma Lumber Co.,* 291 U. S. 67. In that case, "California white pine" was being used to describe what was botanically a yellow pine. The Commission prohibited the use of the word "white" in conjunction with "pine" to describe the product. The Court sustained the order.

The Commission has wide discretion in its choice of a remedy deemed adequate to cope with the unlawful practices in this area of trade and commerce. Here, as in the case of orders of other administrative agencies under com-

---

[2] Sec. 5 (c) provides that the court "shall have power to make and enter upon the pleadings, evidence, and proceedings set forth in such transcript a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed . . ."

parable statutes,[3] judicial review is limited. It extends no further than to ascertain whether the Commission made an allowable judgment in its choice of the remedy. As applied to this particular type of case, it is whether the Commission abused its discretion in concluding that no change "short of the excision" of the trade name would give adequate protection. *Federal Trade Commission* v. *Algoma Lumber Co., supra,* pp. 81–82. The issue is stated that way for the reason that we are dealing here with trade names which, as *Federal Trade Commission* v. *Royal Milling Co., supra,* p. 217, emphasizes, are valuable business assets. The fact that they were adopted without fraudulent design or were registered as trade-marks does not stay the Commission's hand. *Federal Trade Commission* v. *Algoma Lumber Co., supra,* p. 79; *Charles of the Ritz Distributors Corp.* v. *Federal Trade Commission,* 143 F. 2d 676, 679. But the policy of the law to protect them as assets of a business indicates that their destruction "should not be ordered if less drastic means will accomplish the same result." *Federal Trade Commission* v. *Royal Milling Co., supra,* p. 217. The problem is to ascertain whether that policy and the other policy of preventing unfair or deceptive trade practices can be accommodated. That is a question initially and primarily for the Commission. Congress has entrusted it with the administration of the Act and has left the courts with only limited powers of review. The Commission is the expert body to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed.

---

[3] See *International Association of Machinists* v. *Labor Board,* 311 U. S. 72, 82; *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194; *Virginia Electric Co.* v. *Labor Board,* 319 U. S. 533, 543; *Franks Bros. Co.* v. *Labor Board,* 321 U. S. 702, 704–705; *Board of Trade* v. *United States,* 314 U. S. 534, 548; *Federal Security Adm'r* v. *Quaker Oats Co.,* 318 U. S. 218, 227–229; *Northwestern Electric Co.* v. *Federal Power Commission,* 321 U. S. 119, 123–124.

It has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist.

But in the present case, we do not reach the question whether the Commission would be warranted in holding that no qualifying language [4] would eliminate the deception which it found lurking in the word Alpacuna. For the Commission seems not to have considered whether in that way the ends of the Act could be satisfied and the trade name at the same time saved.[5] We find no indication that the Commission considered the possibility of such an accommodation. It indicated that prohibition of the use of the name was in the public interest since the cease and desist order prohibited the further use of the name.[6] But we are left in the dark whether some change of name short of excision would in the judgment of the Commission be adequate. Yet that is the test, as the *Algoma Lumber Co.* and the *Royal Milling Co.* cases indicate. Its application involves the exercise of an in-

---

[4] Petitioner now uses labels reading "Alpacuna Coat—contains no vicuna" and specifies the fibre content of the cloth. See 54 Stat. 1128, 15 U. S. C. § 68.

[5] The opinion of the Commission goes no further than to find that "the name 'Alpacuna' is misleading and deceptive to a substantial portion of the purchasing public in that it represents or implies" that the coats contain vicuna; and that as a result substantial trade is diverted to respondent from its competitors.

[6] This appears not from the opinion but from the paragraph following the order entered by the Commission:

"Commissioner Freer dissents from so much of the order as wholly prohibits the continued use of the trade name 'Alpacuna' for the reason that this trade name, which has been in use for more than thirteen years, is a valuable business asset, and is neither deceptive per se, nor is the testimony concerning its tendency or capacity to deceive sufficiently clear and convincing as to render such prohibition of its use necessary in the public interest.

"A majority of the Commission do not agree with either Commissioner Freer's statements of fact or his conclusions of law."

formed, expert judgment. The Commission is entitled not only to appraise the facts of the particular case and the dangers of the marketing methods employed (*Federal Trade Commission* v. *Winsted Hosiery Co.*, 258 U. S. 483, 494) but to draw from its generalized experience. See *Republic Aviation Corp.* v. *Labor Board*, 324 U. S. 793, 801–805. Its expert opinion is entitled to great weight in the reviewing courts. But the courts are not ready to pass on the question whether the limits of discretion have been exceeded in the choice of the remedy until the administrative determination is first made.

The judgment is reversed and the cause is remanded to the Circuit Court of Appeals for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.