**CONCRETE MATERIALS CORP. v. FEDERAL TRADE COMMISSION.**

No. 10090.

United States Court of Appeals Seventh Circuit.

May 25, 1951.

360

tain representations as to the effectiveness of its products as waterproofing agents. Petitioner manufactured and distributed in interstate commerce products known as Comco 2, Iron Waterproofing; Comco 4, Waterproofing Paste; and Comco 6, Transparent Waterproofing. For the purpose of inducing the purchase of its products petitioner circulated advertising folders, pamphlets and circular letters through the mail. Typical of the statements contained therein are the following:

"You can now permanently stop all leaks and seepage in concrete, brick, stone and tile; also waterproof below water-level basements and pits under pressure. Comco No. 2, our own waterproofing will do the job. This is a special chemical mixture of iron and other chemicals that, when mixed with water only, and brushed into the cracks of walls and floors needing repair will permanently waterproof and stop leaks under all conditions no matter how severe.

"For after-construction waterproofing problems in foundations. Permanently waterproofs concrete, brick, stone and tile walls and floors from either inside or outside. For all classes of construction where a positive waterproof condition is necessary. Successful under all conditions no matter how severe."

And:

"Comco 6, Comco Transparent Waterproofing. A transparent water repellant liquid that effectively seals and waterproofs concrete, brick, stone, stucco, plaster or masonry surfaces. Makes surface permanently nonabsorbent."

And:

"Comco 4, Comco waterproofing paste for new construction work. Produces a close-meshed concrete that increases strength and permanently waterproofs. Makes concrete flow easily around reinforcing."

George F. Callaghan, John J. Toohey, Chicago, Ill., for petitioner.

W. T. Kelley, General Counsel, James W. Cassedy, Assoc. Gen. Counsel, and Donovan Divet, Sp. Atty., Federal Trade Commission, all of Washington, D. C., for respondent.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Petitioner asks us to review and set aside an order of the Federal Trade Commission issued November 9, 1949, requiring that petitioner cease and desist making cer-

After due notice the first hearing was had in Chicago, Illinois. The two principal officers of petitioner appeared without counsel, and one of them testified. The Commission's attorney there notified petitioner's officers that a subsequent hearing would be held in Washington, D. C. for

the purpose of receiving the testimony of three technicians of the National Bureau of Standards as to certain tests which had been made on samples of petitioner's products. Prior to the hearing in Washington the Commission's trial attorney on two occasions suggested to petitioner's officers that an attorney be engaged to represent petitioner. Although timely notified of the time and place, no-one appeared for petitioner at the Washington hearing. During the course of that hearing a letter was received from petitioner requesting a postponement, but the hearing proceeded. However, a subsequent hearing was scheduled for Chicago. Petitioner appeared at the second Chicago hearing with counsel, who moved to strike certain testimony received at the Washington hearing, but did not request an opportunity to cross-examine the witnesses who testified at the Washington hearing. Petitioner then submitted the testimony of its secretary-treasurer, and also that of a chemist of a testing laboratory. The latter testified as to the qualitative and quantitative analyses of petitioner's products, but did not testify as to the lasting qualities of the products when applied as directed.

The trial examiner submitted a Recommended Decision. Thereafter the Commission filed findings of fact and conclusions of law, which were in accord with the recommendations of the trial examiner, and entered the cease and desist order.

Petitioner claims that the Commission's order is not supported by substantial evidence. Its principal contention here is that the tests conducted by the Bureau of Standards were made out of the presence of and without notice to the petitioner, and that the testimony of the Bureau of Standards technicians was largely hearsay testimony. Petitioner argues that such testimony should not have been received by the trial examiner or considered by the Commission. Petitioner also contends that because the order as entered is broad in its sweep, it offers no guide for compliance.

The finding as to Comco 2, Iron Waterproofing is supported by substantial evidence. Cyrus Fishburn, a well qualified expert who has been with the Bureau of Standards since 1928, testified as to the results of experiments he conducted with Comco 2. Although he applied three applications to a specimen brick wall, each in accordance with directions, nevertheless water seeped through at several points. The permeability tests given by him simulated an exposure of the wall to wind-driven rain. Fishburn testified, "The Comco 2 cannot be considered to be a satisfactory waterproofing for permeable brick masonry walls when applied as directed to the inside, unexposed face."

The finding as to Comco 6, Transparent Waterproofing is not supported by evidence quite so unequivocal, as Comco 6 was not tested. But, relying upon a previous report prepared by him, based upon tests in 1943 of another product "containing essentially the same ingredients as Comco 6," Fishburn testified, "The material will not waterproof highly permeable masonry surfaces," but admitted that it would tend to seal the pores in those surfaces. He questioned the permanency of the effectiveness of the pore-sealing, stating, "It may last five or six years and be effective for that time as a pore sealer." He laid considerable emphasis on the fact that it would not seal openings larger than the pore space.

The Commission found that through the advertising statements heretofore stated as to Comco 6, petitioner represented that its product "effectively seals and waterproofs concrete, brick, stone, stucco, plaster and masonry surfaces, and makes said surfaces upon which it is applied permanently non-absorbent to water," and that such representations were false.

Although Fishburn did not test Comco 6, he possessed the education and practical experience which qualified him to judge the waterproofing qualities of Comco 6 by tests which he had previously made of products of essentially the same ingredients compounded in the same proportion. Furthermore, the Commission itself has had wide experience in the masonry waterproofing

industry.[1] We conclude that substantial evidence supports the Commission's findings as to Comco 6.

The testimony as to Comco 4, Waterproofing Paste was given by Leonard Bean and Thomas Kelly, employees of the Bureau of Standards. Bean, a chemist, personally had not made a test of Comco 4 but testified from the notes of a subordinate who was no longer with the Bureau and who made such a test under his direction. He limited his testimony to the chemical analysis of the product, stating that it was a fatty acid type water repellent agent. He disclaimed qualifications to testify as to its waterproofing qualities. Kelly, a well qualified materials engineer, testified that he was familiar with the report of the Bureau of Standards prepared by his predecessor, Hornibrook, who was no longer with the Bureau. Kelly referred to Comco 4 as a "type of waterproofing which we have tested at the Bureau of Standards." He testified further that from his general scientific knowledge, Comco 4 does not make concrete waterproof in the sense of a permanent condition, and that under pressure it does not have any appreciable waterproofing effect. The Hornibrook report (Exhibit 16) contained several comments which were favorable to petitioner, as follows: "These materials are generally capable of effecting small reductions in absorption by capillarity, and because of the increased workability imparted to the concrete, may indirectly contribute to the uniformity of the concrete in place (that is, result in a greater freedom from honeycomb and similar defects), and accordingly improve the impermeability. Such improvements in impermeability and absorption as effected by the use of this material may be expected to be of reasonable permanence."

Petitioner advertised Comco 4 for new construction work and claimed it "produces a close-meshed concrete that increases strength and permanently waterproofs. Makes concrete flow easily around rein-

forcing." It is apparent that the only words subject to criticism are, "permanently waterproofs." Petitioner objects because the Commission's order prohibits it from advertising Comco 4 as suitable for waterproofing without disclosing that its use will not render surfaces below grade impermeable to water under pressure. Petitioner states that it never advertised that Comco 4 would render surfaces below grade impermeable to water under pressure. However, it did represent for new construction that Comco 4 would permanently waterproof, and we think the Commission was justified in insisting petitioner make clear that it would not be satisfactory for that purpose for surfaces below grade subject to water under pressure.

■ Petitioner's contention that the Commission should not have considered any of the testimony of the technicians of the Bureau of Standards cannot be sustained. True, it is incumbent on the Commission to prove its charges by competent, relevant and substantial evidence. Carlay Co. v. Federal Trade Comm., 7 Cir., 153 F.2d 493. But administrative agencies, such as the Federal Trade Commission, have never been restricted by the rigid rules of evidence. Federal Trade Comm. v. Cement Institute et al., 333 U.S. 683, 705, 68 S.Ct. 793, 92 L.Ed. 1009. Moreover, the petitioner's objections go largely to the weight of the evidence, and it is well established that the weight to be given is a matter for the determination of the Commission. Corn Products Refining Co. v. Federal Trade Comm., 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320. Perhaps it would have been better for petitioner to have been represented by an attorney at the Washington hearing so that the witnesses from the Bureau of Standards might have been cross-examined, but it was no fault of the Commission that this was not the case.

■ As to the scope of the cease and desist order, our consideration must be whether the Commission has made "an

---

1. After many conferences and months of investigation, the Commission promulgated on August 31, 1946, trade practice rules for the masonry waterproofing in- dustry. Fed.Reg., 16 Code of Federal Regulations (1949 Ed.), p. 481. Rule 2 covers "Deceptive Use of Representations 'Waterproof,' 'Waterproofing,' Etc."

allowable judgment in its choice of the remedy." Jacob Siegel Co. v. Federal Trade Comm., 327 U.S. 608, 612, 66 S.Ct. 758, 760, 90 L.Ed. 888. We think the Commission was clearly supported by substantial and adequate findings to conclude that the practices of petitioner were to the prejudice of the public and constituted unfair and deceptive acts in commerce, and that the form of the Commission's order meets the test of an allowable judgment in the choice of the remedy.

Enforcement of the cease and desist order of the Commission is ordered.