**BIGELOW–SANFORD CARPET COMPANY, Inc., Appellant,**

v.

**FEDERAL TRADE COMMISSION et al., Appellees.**

Nos. 15877, 15894.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 12, 1960.

Decided March 23, 1961.

Mr. Mathias F. Correa, New York City, with whom Messrs. James A. Fowler, Jr., and Eugene F. Sikorovsky, New York City, were on the brief, for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellees. Messrs. Alan B. Hobbes, Assistant General Counsel, Federal Trade Commission, and Francis C. Mayer,

Attorney, Federal Trade Commission, also entered appearances for appellee Federal Trade Commission. Mr. Thomas F. Howder, Attorney, Federal Trade Commission, also entered an appearance for appellee Federal Trade Commission in No. 15894.

Before Mr. Justice BURTON, retired,* and DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

The Federal Trade Commission denied appellant's application for the establishment of a new generic name "polynosic" for a fiber produced by the appellant, and also refused to amend the Commission's definition of "rayon." Appellant thereupon sought relief in the District Court which granted the appellees' motion for summary judgment and dismissed the complaint. Appellant in No. 15894 seeks reversal of that order.[1]

The Textile Fiber Products Identification Act[2] is intended to protect producers and consumers against misbranding and false advertising of the fiber content of textile fiber products, as its title states. Section 7(a) provided that the Act be enforced by the Commission under rules, regulations and procedure provided for in the Federal Trade Commission Act. Section 7(c) specifically directed the Commission to make such rules and regulations "including the establishment of generic names of manufactured fibers" as may be necessary and

proper for the administration and enforcement of the Act.

Accordingly the Commission on February 10, 1959 gave notice of proposed rule-making and public hearing, the latter being set for March 10, 1959. Various parties, but not the appellant,[3] appeared and presented their views orally and in writing. All interested parties were further permitted to submit in writing not later than March 27, 1959, any additional statements deemed desirable. As of May 20, 1959, the Commission issued its rules which were published in the Federal Register on June 2, 1959, to become effective as of March 3, 1960. The rules applied to many if not all manufactured fibers including glass, rubber and metal fibers, as well as to rayon, nylon, acrylic and polyester fiber.[4] Rule 7 in pertinent part reads:

"Generic Names and Definitions for Manufactured Fibers.

"Pursuant to the provisions of section 7(c) of the Act, the following generic names for manufactured fibers, together with their respective definitions, are hereby established:

\* \* \* \* \*

"(d) *Rayon.* A manufactured fiber composed of regenerated cellulose, as well as manufactured fibers composed of regenerated cellulose in which substituents have replaced not more than 15 per cent of the hydrogens of the hydroxyl groups."[5]

As of December 11, 1959, appellant filed its application[6] requesting a public

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

1. Appellant also had sought a preliminary injunction which the District Court denied. Bigelow-Sanford Carpet Company, Inc. v. Federal Trade Comm., D.C.D.C. 1960, 182 F.Supp. 212. Our No. 15877 is an appeal from the order there. We consolidated the cases by our order of July 28, 1960.

2. 72 Stat. 1717, 15 U.S.C.A. §§ 70–70k.

3. The complaint alleged that appellant about August 3, 1959, acquired American rights to produce and manufacture a new cellulose fiber, the relevant facts as to

which had not, on information and belief, been presented to the Commission at any time before publication of the Rules.

4. 16 C.F.R. §§ 303.1–303.45 (1960).

5. Id. at § 303.7.

6. The Commission's Rule 8 created a procedure for establishing generic names for manufactured fibers.

"(a) Prior to the marketing or handling of a manufactured fiber for which no generic name has been established by the Commission, the manufacturer or producer thereof shall file a written application with the Commission, request-

hearing at which appellant might be afforded an opportunity to submit proof in support of its prayer for the establishment of a generic name for its fiber, polynosic. By a supplemental application[7] of January 15, 1960, appellant requested a hearing before the full Commission and an opportunity to present oral argument.

On February 8, 1960, within the 60 days provided in Rule 8, the Commission after giving "full consideration to the information set forth" in the appellant's application,[8] denied relief. The candidate fiber was a "manufactured cellulosic fiber with a fine and stable microfibrillar structure," appellant's proposed definition had stated in part. The Commission determined that appellant's fiber was reconstituted cellulose and that its chemical composition is identical to that of natural and manufactured cellulosic fibers, as the application and exhibits had shown. "Regenerated cellulosic fiber being rayon, it therefore follows that polynosic fiber and rayon are of identical chemical composition or, in other words, contain the same fiber-forming substance."

Appellant had claimed polynosic possessed distinguishing properties and other differences from rayon, particularly deriving from the fact that the chain length of the molecules in its candidate fiber was approximately twice the average chain length of rayon molecules. All such factors the Commission deemed immaterial since "similarly substantial variations in molecular chain lengths prevail among various rayons now commercially produced."

The Commission likewise rejected claims that asserted dissimilarities with respect to microscopic structure and performance characteristics between the candidate fiber and rayon would or should constitute adequate bases for the establishment of the generic name polynosic. Under the rules, the Commission concluded, appellant was still entitled to make representations, if warranted by the facts, as to differences in or superiority of the candidate fiber over others in the same generic category. Appellant was thus "fully protected."

The Commission determined, in effect, that, even recognizing appellant's claims as to performance characteristics, physical properties and other advantages attributable by appellant to polynosic, the fiber-forming substance of appellant's candidate fiber was regenerated cellulose, and the fiber therefore was generically rayon.

The application on its face informed the Commission sufficiently[9] for that determination just as it failed to present an adequate showing of necessity under Rule 8 for the establishment of a *new* generic name or of a need for public hearing or oral argument to that end. In short, the Commission found that "polynosic" fell within the category of rayon, as defined in Rule 7(d) just as all definitions and generic names had been formulated "with emphasis on the identity of the respective fiber-forming substances of each of the fibers considered."

We have concluded that the Commission's promulgation of the rules was expressly authorized by the Act; the

---

ing the establishment of a generic name for such fibers. * * *
* * * * *
"(b) Upon receipt of the application, the Commission will, within sixty (60) days, *either deny the application* or assign to the fiber a * * * symbol for temporary use during further consideration of such application." (Emphasis supplied.) 16 C.F.R. § 303.8 (1960).

7. It was further alleged that the new fiber was in commercial production in

Europe, marketed under the name "Polynosique."

8. Appended to the application were detailed exhibits explaining the technology, photographs, test methods and other scientific data concerning polynosic.

9. Rarely could an applicant be expected to supply more complete documentation of and information respecting its claims than had here been submitted to the Commission.

adoption of generic names for the various manufactured fibers was specifically commanded by Congress; and the Commission's rule-making procedures conformed to the requirements of the Administrative Procedure Act.[10] That the Commission utilized as its basic criterion the chemical composition of the various fibers has not been shown to be unreasonable, and on the contrary, the exercise of the Commission's judgment in this respect is well within the wide latitude with which the Commission is invested. As to matters entrusted to its administration, "Its expert opinion is entitled to great weight in the reviewing courts."[11]

■ We are persuaded that appellant can not seriously attack the Commission's definition of rayon. Its complaint rather stems from the Commission's conclusion (a) that polynosic is generically rayon, and therefore (b) that appellant is not entitled to a new generic term for its fiber. "Rayon," it is argued, lacks public acceptance. Its performance characteristics are inferior to those of polynosic, the chemical composition of which is identical with that of all natural and manufactured cellulosic fibers but with differences in structure. Polynosic fibers, for example, possess a molecular chain length almost twice that of rayon.

Polynosic has greater dry rupture tenacity, dimensional stability (thus reducing shrinkage), superior crease resistance and wet elastic recovery, unimpaired tearing strength and tensile properties, satisfactory mercerization capacity, good "feel" and amenability to a wide range of dye-stuffs. All such properties[12] distinguish polynosic from "rayon" with which appellant's fiber should not be assimilated, appellant urges.

Although all such data had been presented to the Commission, appellant's brief tells us the "major error, in requiring the use of the prejudicial name 'rayon' for plaintiff's fiber, was the failure to consider the facts and see whether the purpose of the Act would be served by establishing the new name 'polynosic.'" Again, the "basic question before the court is whether it was reasonable for the Commission to insist upon applying a detrimental name to a new fiber the Commission knew nothing about, when in fact that fiber is 'a new and different fiber with qualities greatly superior to the old rayon fiber.'"

We fail to find arbitrary and unreasonable the Commission's rejection of appellant's Rule 8[13] application. The "facts" were fully presented, indeed no showing is made to us[14] as to additional or different facts which might have pro-

10. Without a showing of prejudice in any respect, appellant argues that the Commission in adopting the rules failed to announce a "concise general statement of their basis and purpose," (5 U.S.C.A. § 1003(b)). Congress in the Act had specified its purposes in seeking fiber identification with generic categories the basis for administration of the Act. This Commission was here executing an express Congressional command. Moreover, reflecting the Congressional intention, the rules clearly and unmistakably recite their source, basis and purpose, thus providing ample notice to all affected by them and meeting fully the objective of § 1003(b). Cf. Owensboro on the Air v. United States, 1958, 104 U.S. App.D.C. 391, 397, 262 F.2d 702, 708, certiorari denied, 1959, 360 U.S. 911, 79 S.Ct. 1296, 3 L.Ed.2d 1261.

11. Siegel Co. v. Trade Comm'n, 1946, 327 U.S. 608, 614, 66 S.Ct. 758, 761, 90 L.Ed.

888, and see Pacific States Co. v. White, 1935, 296 U.S. 176, 186, 56 S.Ct. 159, 80 L.Ed. 138.

12. Appellant's application fully informed the Commission in all the foregoing respects—and others—with important and detailed analysis and explanation.

13. Supra note 6.

14. Appellant's vice-president's affidavit in support of appellant's motion for a preliminary injunction submitted new matter as to appellant's use of its trade name "Zantrel" as applied to polynosic, and other commercial data which do not affect our inquiry. Judge Youngdahl's findings, though broadly stated, support his denial of the requested injunction. And see his opinion, supra note 1, and his opinion in Courtaulds (Alabama) Inc. v. Kintner, D.C.D.C.1960, 182 F. Supp. 207.

duced a reversal of the Commission's evaluation of the record before it. The appellant's application had recited the long history of Commission study of rayon of which the Commission, naturally, was well aware.[15] The application further pointed out that performance labeling had been rejected by Congress as not practicable and that the fiber identification method had been adopted. "The consumer is not interested in the chemical composition as such," the Commission was informed. In that context, and against the background we have noted, the Commission may have decided that the proposed definition of polynosic added little to what the public might need to know. The Commission may have thought the appellant sought a definition which would describe *only* the candidate fiber—and thus promote, rather than diminish confusion, in a highly controversial field. In short, the Commission had been commanded to exercise its judgment in the establishment of each of some 16 generic categories.

Appellant had asked the Commission to define polynosic as

"A manufactured cellulosic fiber with a fine and stable microfibrillar structure which is resistant to the action of 8% sodium hydroxide solution down to 0° C., which structure results in a minimum wet strength of 2.2 grams per denier, and a wet elongation of less than 3.5% at a stress of 0.5 grams per denier."

The Commission, reasonably we think, declined to adopt that definition.

We are not persuaded that it was "applying a detrimental name to a new fiber" it "knew nothing about." The performance characteristics and differences in microscopic structure had been fully explained. That they contributed to yield a highly useful and improved fiber, we do not doubt, and we perceive no suggestion that the Commission failed so to recognize. Indeed, responding to questions by the court, Commission counsel quite properly agreed that appellant is free to advertise the qualities of its product as polynosic-rayon. The advantageous characteristics and properties asserted for the fiber, so identified, may readily constitute the basis for consumer appeal. The Commission itself in denying relief observed: "Under the above-mentioned Rules and Regulations, a seller's right to make representations warranted by the true facts as to differences in or superiority of his fiber over others in the same generic category is fully protected." We agree.

The inquiry before the Commission was related by the Act itself to a definition of "textile fiber product" [16] and the establishment of generic names of manufactured fibers.[17] Both Congress and the Commission had clearly recognized that the purposes of the Act were best to be served on the basis of identification of the manufactured fibers through generic names as established in Rule 7, properly issued as we have seen. The Commission had exercised that judgment which the Act specifically commanded be applied.[18] Since in our view the Commission might properly conclude that appellant's can-

15. The Commission's expertise with reference to possibly fraudulent and deceptive advertising and unfair competition in the whole broad fabric field has been developed over many years, from, e.g., Federal Trade Comm'n v. Winsted Co., 1922, 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729, down to Siegel Co. v. Trade Comm'n, supra note 11.

16. § 2(h) (1), 72 Stat. 1717; we do not discuss "fabric" as there defined for appellant tells us it has no control over labeling, once it sells the fiber.

17. § 7(c), 72 Stat. 1721, and "fiber" had already been defined in the Act as "a unit of matter which is capable of being spun * * * and which is the basic structural element of textile products." § 2(b), 72 Stat. 1717.

18. Compare Wool Products Labeling Act of 1939, 15 U.S.C.A. § 68d; Fur Products Labeling Act, 15 U.S.C.A. § 69f; and Flammable Fabrics Act, 15 U.S.C. § 1194.

didate fiber came within the definition of "rayon," there was no error in the Commission's denial of appellant's application.

The District Court's orders with respect thereto are

Affirmed.