## State Board of Funeral Directors *v.* Errichetti, Appellant.

Argued September 8, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Michael A. Marolla,* for appellant.

*Victor L. Schwartz,* Assistant Attorney General, with him *John W. Flannery,* Assistant Attorney General, *Thomas H. Lane,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for appellee.

OPINION PER CURIAM, November 12, 1969:
Order affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

Appellant is a funeral director, licensed under the Funeral Director Law and subject to the supervision of the State Board of Funeral Directors [hereafter referred to as the "Board"]. Act of January 14, 1952, P. L. (1951) 1898, as amended, 63 P.S. §479. Prior to the instant proceedings, he had practiced his profession for thirty years, apparently without incident.

From time to time, appellant had employed one Leandro Angelone. From the time that he was a boy, Angelone served appellant in a variety of ways. He drove limousines, arranged flowers, and helped clean bodies. Angelone was so influenced by his work that he too decided to become a funeral director.

The record indicates that Angelone first considered becoming a funeral director in the State of Maine. In November, 1962, he successfully passed the Maine examination for a funeral director's license. Maine, however, refused to license him solely because he lacked a required two-year internship. We can conclude from

the Maine statute[1] that in November, 1962, Angelone had completed "a 12 months' course of study in a school or college of mortuary science." This fact was confirmed by the counsel for the Board in oral argument.

In January, 1963, Angelone returned to appellant to serve his internship and worked for appellant for a period of two years. During that period, he also decided to earn credit toward a Pennsylvania license. In May, 1964, he registered for the first time, as a resident interne in this state and began serving his six months' internship. We can conclude from the statute[2] that by May, 1964, Angelone had completed his "two

---

[1] We can take judicial notice of the relevant sections of the Maine statutes, in force in November, 1962: "Any person wishing to become a funeral director . . . shall have practiced funeral directing for at least 2 years under the direction and supervision of a licensed funeral director, and graduated from a 12 months' course of study in a school or college of mortuary science, the requirements and standards of which school or college shall have the approval of the board, and shall have an intelligent comprehension of the dangers from contagious and infectious diseases and of the actions and uses of disinfectant agencies as the Bureau of Health may prescribe as necessary for the protection of the living, and shall pass an examination before the board.

. . .

"Applicants for funeral directors' licenses shall pass an examination upon their knowledge of sanitation, bacteriology, disinfection of the apartments, bedding, clothing or anything likely to be affected in the case of death from infectious or contagious disease." Maine Rev. Stat. 1954, c. 25, §§195, 197; 1955, c. 213, §§1, 2, 3; 1961, c. 394, §8.

[2] In May, 1964, the relevant portions of the Funeral Director Law relating to prerequisites for internship were as follows: "Each applicant applying after the thirty-first day of August, one thousand nine hundred fifty-five, shall have successfully completed two years of academic work at a college or university accredited by the Department of Public Instruction, and a course of actual class work in didactic and laboratory studies in a school of embalming for a period to be fixed by the board at not less than six hundred (600) hours nor more than twenty-four hundred

years of academic work at a college or university." Moreover, counsel for the Board indicated that some or all of the academic work was completed before January, 1963.

In January, 1965, Angelone became a licensed funeral director in Pennsylvania. That same month, he also asked appellant to complete a Maine questionnaire, which indicated that Angelone had embalmed twenty-five bodies during the preceding two-year period. Appellant subsequently denied that Angelone had done more than clean and suture bodies.

Maine sent a copy of the questionnaire to the Board. The Board, upon discovering that Angelone had not been registered during part of the two-year period in which he had prepared and embalmed bodies, issued citations to both Angelone and appellant charging them with violation of Section 13(b) of the Funeral Director Law, 63 P.S. §479.13(b) (Supp. 1969), which provides: "No person other than a licensed funeral director or a resident interne shall prepare or embalm the body of any deceased person."

After a hearing, both Angelone and appellant were found to have violated Section 13(b). Angelone was placed on a year's probation. Appellant's license, how-

---

(2400) hours, and shall have completed six months as a resident [interne].

"No more than an average of one hundred (100) hours of embalming or mortuary school training shall be given or required in any calendar month of any one year.

. . .

". . . [T]he required period as a resident [interne] shall, in each case, be served after the applicant has fulfilled his educational requirements." Section 3(c), (e), 63 P.S. §479.3(c), (e).

The school of embalming requirement now reads: "Each applicant . . . shall have successfully completed . . . a one year course at a mortuary college or university accredited by the American Board of Funeral Service Education, Inc." Act of July 31, 1968, P. L.    , No. 295, §2, 63 P.S. §479.3(c) (Supp. 1969).

ever, was permanently revoked. Appellant appealed to the Court of Common Pleas of Dauphin County, which sustained the order of the Board. This appeal followed.

The Administrative Agency Law is applicable to adjudications of the Board. Funeral Director Law §12, 63 P.S. §479.12; Administrative Agency Law, Act of June 4, 1945, P. L. 1388, §51, as amended, 71 P.S. §1710.51(34) (Supp. 1969). That law provides that, on appeal, the Court of Common Pleas of Dauphin County "may set aside or modify" an adjudication of the Board if it finds it "not in accordance with law." Id. §44, 71 P.S. §1710.44.

An appeal lies to this Court from the decision of the Court of Common Pleas of Dauphin County. Id. §45, as amended, 71 P.S. §1710.45. We may determine whether the court below erred in not modifying or setting aside an adjudication of the Board.

In *Jacob Siegel Co. v. F.T.C.*, 327 U.S. 608 (1946), the Supreme Court of the United States determined the validity of an administrative adjudication under a statute similar to Administrative Agency Law, Section 44.[3] The administrative agency had found the use of a certain name by a clothing manufacturer to be "deceptive" and had banned use of the name by the manufacturer. The Court noted that the agency's order would have an important effect on the manufacturer's business assets. Accordingly, it said, use of the name could not be banned " 'if less drastic means will accomplish the same result.' "[4] 327 U.S. at 612. The

---

[3] The Court's review power was determined by the Federal Trade Commission Act §5, 52 Stat. 111, which provided, in part, that the reviewing court "shall have power to make and enter upon the pleadings, evidence, and proceedings set forth in such transcript a decree affirming, modifying, or setting aside the order of the Commission."

[4] *Siegel* also quoted *F.T.C. v. Royal Milling Co.*, 288 U.S. 212, 217 (1933), where the Court had said with respect to the banning

Court said that, on review, it could determine "whether the Commission [the administrative agency] abused its discretion in concluding that no change 'short of the excision' of the trade name would give adequate protection." Ibid. Also see *F.T.C. v. Cement Institute,* 333 U.S. 683, 726 (1948); *F.T.C. v. Colgate-Palmolive Co.,* 380 U.S. 374, 392 (1965); L. Jaffe, Judicial Control of Administrative Action 267-269 (Abridged edition 1965).

The principles enunciated by the Supreme Court in *Siegel* are applicable to our review in this case. Here, too, the adjudication of the administrative agency, the State Board of Funeral Directors, can have an important effect. License suspension or revocation is economically disastrous for the licensee. It deprives him of his livelihood and diminishes him in the eyes of both the members of his profession and the community in which he works. Should he ever regain his license, his image remains tarnished. Thus, the licensee's future is jeopardized when the Board suspends or revokes his license. Accordingly, it is the Board's duty not to issue an order that goes "further than is reasonably necessary to correct the evil" committed by the licensee. *F.T.C. v. Royal Milling Co.,* supra. The Court of Common Pleas of Dauphin County must determine whether the Board has abused its discretion by issuing too broad an order, and if it has abused its discretion, the court can modify or set aside the order. On review, we can determine whether the court below has erred in not finding an abuse of discretion.

---

of a trade name by the administrative agency: "These names have been long in use . . . They constitute valuable business assets in the nature of good will, the destruction of which probably would be highly injurious and should not be ordered if less drastic means will accomplish the same result. The orders should go no further than is reasonably necessary to correct the evil and preserve the rights of competitors and public . . ."

Before we may determine whether the Board abused its discretion, we must find what "evil" the Funeral Director Law sought to prevent through Section 13(b). The Title to the Funeral Director Law is helpful in this regard. The Title states, in part, that the law is "to provide for the better protection of life and health of the citizens of this Commonwealth." No doubt the legislature thought that only licensed funeral directors and resident internes could protect the community from the danger of disease from dead bodies.

Under the facts of this case, however, there was no danger to the community from Angelone's acts. In January, 1963, when Angelone may have begun embalming,[5] he had completed his embalming school requirement. He may also have completed his academic requirement by then. If he had not, he completed that requirement shortly thereafter. Thus, Angelone had completed the prerequisites to serving his internship before registering as an interne.

Moreover, Angelone's embalmings apparently were of the required caliber. Section 3(f) of the Funeral Director Law requires at least twenty-five embalmings for a funeral director's license. 63 P.S. §479.3(f). The Board credited Angelone's twenty-five embalmings before January, 1965, toward his license.

Under the circumstances of this case, an order of revocation was much broader than necessary. As I have noted, the revocation of a license is the most serious sanction which may be imposed against a funeral director. The court or Board should take such action only when the record sufficiently reflects that the violations were so outrageous or the potential danger to the community so great that any lesser action would

---

[5] It is not clear from the record during what portion of the two-year period, beginning January, 1963, Angelone did his embalming.

seriously pervert the purposes of the Funeral Director Law. The remedy must not go further than is reasonably necessary to correct the violation. Here, however, there was little danger to the community from Angelone's acts. The revocation order, therefore, went far beyond the action necessary to punish the offender and deter future violations of the Funeral Director Law. Under such circumstances I believe that the Board and lower court abused their discretion in authorizing this revocation.

I would reverse the order of the Court of Common Pleas of Dauphin County and remand the record to that court for modification of the Board's order consistent with the rules set forth in this opinion.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.