425 F.2d 1346
 J. H. KENT, Individually, et al., Petitioners,
v.
Clifford M. HARDIN, Secretary of Agriculture, The United States Department of Agriculture, the Commodity Exchange Authority, et al., Respondents.
 No. 28027.
 United States Court of Appeals, Fifth Circuit.
 May 14, 1970.
 
 COPYRIGHT MATERIAL OMITTED Douglas C. Wynn, J. Wesley Watkins, III, Greenville, Miss., for petitioners.
 John N. Mitchell, Atty. Gen. of the U. S., Alan S. Rosenthal, Daniel Joseph, Attys., Dept. of Justice, Washington, D. C., Alex C. Caldwell, Administrator, Commodity Exchange Authority, Clifford M. Hardin, Secretary of Agriculture, U. S. Dept. of Agriculture, Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., for respondents.
 Before JOHN R. BROWN, Chief Judge, and BELL and INGRAHAM, Circuit Judges.
 INGRAHAM, Circuit Judge.
 
 
 1
 This is a petition to review an order of the Judicial Officer of the Department of Agriculture, on behalf of the respondent Secretary of Agriculture, issued pursuant to the Commodity Exchange Act, 7 U.S.C. § 9.
 
 
 2
 In 1966 an administrative complaint was filed alleging that J. H. Kent and his son-in-law Edward C. Epperson had traded in wheat, soybean and potato futures pursuant to an agreement between them, that Kent had financed Epperson by advancing him money belonging to the Kent Company, and that, as a result of the joint trading, Kent and Epperson had held positions and engaged in daily trading in willful violation of 7 U.S.C. § 6a, and the orders of the Commodity Exchange Commission establishing limits on positions and trading in wheat, soybeans and potatoes for future delivery. Respondents filed an answer denying the material allegations of the complaint. The referee (a hearing examiner of the Department of Agriculture) held, after considering the exhibits and testimony of both sides, that the trades in question had been made by Kent and Epperson pursuant to an agreement as charged in the complaint. The referee recommended that Kent, the Kent Company and Epperson lose all trading privileges on futures markets for 90 days.
 
 
 3
 After filing of exceptions by petitioners, and oral argument before the Judicial Officer of the Department of Agriculture, the Judicial Officer issued a decision which followed closely the determinations and recommendations of the referee, suspending the three parties from trading for 90 days, which decision became the final decision of the Secretary.
 
 
 4
 Petitioners then filed this petition for direct review in this court. 7 U.S.C. § 9.
 
 
 5
 Petitioners list 16 "specifications of error" which can be reduced to the following issues:
 
 
 6
 1. Was the decision of the Judicial Officer based on sufficient evidence?
 
 
 7
 2. Did the Judicial Officer err in admitting certain testimony and exhibits?
 
 
 8
 3. Did the Judicial Officer fail to state his conclusions of law and factual determinations?
 
 
 9
 4. Was the penalty imposed too severe in view of the violation?
 
 
 10
 5. Did the Judicial Officer delay too long in announcing his decision? 6. Was the Kent Company, a partnership, not a party because of failure to serve all partners?
 
 I.
 SUFFICIENCY OF THE EVIDENCE
 
 11
 The burden of proof on the Government was that of proving its case by a preponderance of the evidence, and the scope of review is somewhat broader than under the `clearly erroneous' rule. General Foods Corporation v. Brannan, 170 F.2d 220 (7th Cir.1948); G. H. Miller & Co. v. United States, 260 F.2d 286 (7th Cir.1958). The judgments of the referee and the Judicial Officer appear to be sustained by the greater weight of the evidence. The family ties between Kent and Epperson, Kent's greater experience in the field and the undeniable fact that Epperson appears to have entered the grain futures market five days after the Kent Company reached the legal maximum in amount of grain futures held, are circumstantial evidence of the most convincing sort. In addition, the testimony of Torrey A. Craig, a CEA investigator, included the admission by Kent that Epperson followed Kent's pattern of trading futures. That the Government produced nothing more concrete than this does not indicate that there was no agreement, since due to long acquaintanceship and family ties, there would be no need for a formal contract.
 
 II.
 ADMISSION OF TESTIMONY AND EXHIBITS
 
 12
 Petitioners assert that, as Craig failed to tell them the purpose of his mission and failed to give them Miranda warnings when interviewing them, his testimony as to that interview was inadmissible. There are several difficulties with this argument. First, the proceeding here is not a criminal or quasi-criminal one as petitioners maintain. Trading in grain futures is a privilege conditioned on obedience to the regulations set down by the Department of Agriculture. Revocation or suspension of that privilege is a remedial sanction "characteristically free of the punitive criminal element." Brandeis, J., in Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Even assuming that the proceeding is criminal in that it involves a penalty or forfeiture, there is no reason to assume that the petitioners had a right to be informed of the nature of the inquiry and the questions asked. United States v. Machiewicz, 401 F.2d 219 (2d Cir.1968), cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968), and there is here no element of trickery or a dragnet approach. As to the Miranda warnings, it is only necessary to state that this was a non-custodial investigation to which Miranda does not apply, Archer v. United States, 393 F.2d 124 (5th Cir.1968), and which was free of circumstances indicating compulsion. United States v. Prudden, 424 F.2d 1021 (5th Cir.1970) [1970].
 
 
 13
 The admission of the Department of Agriculture letter from 1965 informing Kent that he had exceeded the trading limits was not error since it bore on the elements of knowledge and willfulness in the present transactions.
 
 III.
 FACTUAL DETERMINATIONS AND LEGAL CONCLUSIONS
 
 14
 This argument is patently weak. The cases which hold that factual determinations must be appropriately definite to express the conclusion of the maker do not require an opinion worthy of a Brandeis. The Judicial Officer's detailed opinion is not deficient in definiteness nor is it ambiguous.
 
 IV.
 SEVERITY OF THE PENALTY
 
 15
 Petitioners' argument that persons who have done much worse things received lighter penalties is unsound. The function of a court in reviewing administrative imposition of sanctions is not to determine the wisdom of imposing them or the hardship they impose, but rather to see if they bear a reasonable relation to the practices which invoked them and if they evidence such relation, to approve them. Jacob Siegel Co. v. F. T. C., 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946); Goodman v. Benson, 286 F.2d 896 (7th Cir. 1961); Irving Weis & Co. v. Brannan, 171 F.2d 232 (2d Cir.1948). "Reasonable relation" between penalty and violation could here be discerned from the fact that (1) on the facts determined, Kent was a repeater, and (2) Kent's large family, all of whom appear to be interested in the future business, had unusually great opportunities to violate the regulations without being detected. A 90-day suspension as a deterrent to future violations does not appear to be severe.
 
 V.
 DELAY
 
 16
 The delay here involved between the filing of briefs and the hearing examiner's report was 14 months. Petitioners' claim that this was excessive delay is based on the assumptions that the case was simple and the hearing examiner had little else to do. The 14-months' delay is claimed not to be reasonable dispatch and a violation of 5 U.S.C. § 555 requiring dismissal of the Government's complaint by the Judicial Officer.
 
 
 17
 The simplicity of the case is not apparent on its face or otherwise. The opinion of Judge Brown in F.T.C. v. J. Weingarten, Inc., 336 F.2d 687 (5th Cir.1964), cert. denied, 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 796 (1965), states that delay of two and one-half years by a hearing examiner is not unreasonable slowness per se and the party complaining about the slowness of a decision being rendered must prove facts showing either a dilatory attitude on the part of the official or his subordinates or the normal time necessary to dispose of a similar proceeding. It appears that such proof was not forthcoming here.
 
 VI.
 FAILURE TO SERVE ALL PARTNERS
 
 18
 Petitioners contend that under 5 U.S.C. § 555(c) process can only be served as authorized by law, that the Act and Regulations on Commodities Exchange regulation do not provide a method for serving process and as a result, state law (Mississippi) governs. Under Mississippi law, a partnership can only be made a party by serving all partners. As this was not done, petitioners assert that there has been no valid service on the partnership. This argument ignores the provisions for service in 17 C.F.R. § 0.22(b), which allows service on a partnership by serving one partner. The Regulations, not Mississippi law, govern.
 
 
 19
 The decision of the Secretary is affirmed and his order will be enforced.