# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1363

_____

Todd Syverson, doing business as     *
Syverson Livestock Brokers,     *
    *
        Petitioner,     *    Petition for Review of an
    *    Order of the United States
    v.     *    Department of Agriculture.
    *
United States Department of     *
Agriculture,     *
    *
        Respondent.     *

_____

Submitted: November 16, 2011
Filed: January 27, 2012

_____

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Todd Syverson appeals from the sixteen-month suspension of his registration under the Packers and Stockyards Act (PSA or Act), 7 U.S.C. §§ 181-229, a sanction imposed after remand by the judicial officer of the United States Department of Agriculture. We affirm.

I.

In 2002, Syverson purchased cattle for Lance Quam. Syverson purchased cattle at a slaughter auction, had them inspected by a veterinarian, consigned them for sale at a dairy auction, and then repurchased them from his own consignment. He delivered some of the cows to Quam, accompanied by an invoice that showed the dairy-auction price, a commission, a veterinary fee, and the cost of trucking. Syverson did not disclose that he had repurchased the cows from his own consignment or that the cows initially had been purchased at the slaughter auction, at a lower price.

After Quam discovered Syverson's practice, he complained to the Grain Inspection, Packers and Stockyard Administration (GIPSA). GIPSA commenced an investigation and requested that Syverson produce his business records. Syverson claimed that the records were lost or misfiled, but eventually turned over some records. Those records did not include the initial price or the source of the cows purchased for Quam. In 2004, GIPSA filed a formal complaint against Syverson, alleging that his self-dealing was an unfair or deceptive practice, in violation of 7 U.S.C. § 213(a), and that his failure to keep proper records violated 7 U.S.C. § 221.

An administrative law judge (ALJ) determined that Syverson, acting as a dealer, had engaged in unfair and deceptive trade practices and had intentionally withheld business records, in violation of the PSA. The ALJ assessed a civil penalty and ordered Syverson to cease and desist from similar violations of the Act. GIPSA appealed the decision to the judicial officer. The judicial officer concluded that Syverson acted as a market agency, engaged in unfair and deceptive practices, and failed to keep adequate records of his business. Along with a cease and desist order, the judicial officer suspended Syverson's registration under the PSA for five years. Syverson then appealed to our court.

In our first decision, Syverson v. U.S. Department of Agriculture, 601 F.3d 793 (8th Cir. 2010) (Syverson I), we upheld the determination that Syverson, as a market agency, had violated the Act. We reversed the judicial officer's imposition of a five-year suspension, however, concluding that it was "unwarranted in law and without justification in fact." Id. at 805. On remand, GIPSA recommended a two-year suspension, while Syverson requested a suspension of "less than 30 days, if any." In re Todd Syverson, P&S Docket No. D-05-0005, 3 (Nov. 16, 2010) (Decision and Order on Remand) (quoting the brief Syverson submitted after remand). Following briefing and review of the record, the judicial officer imposed a sixteen-month suspension. The final order allows Syverson to apply for a modification to be a salaried employee of another registrant or packer, following the expiration of eight months of the suspension term. Id. at 14-15. The suspension has been stayed pending judicial review.

## II.

The Secretary may suspend "for a reasonable specified period" any registrant who has violated any provision of the Act. 7 U.S.C. § 204. We review the Secretary's orders "according to the fundamental principle that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy the relation of remedy to policy is peculiarly a matter for administrative competence." Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185 (1973) (quoting Am. Power Co. v. SEC, 329 U.S. 90, 112 (1946)) (internal quotations and alterations omitted). "The court may decide only whether under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in [his] choice of the remedy.'" Id. at 189 (quoting Jacob Siegel Co. v. FTC, 327 U.S. 608, 612 (1946)) (alterations in original). Thus, we cannot overturn the Secretary's choice of sanction unless it is "unwarranted in law . . . or without justification in fact." Id. at 185-86 (quoting Am. Power Co., 329 U.S. at 112-13).

In Syverson I, we held that the five-year suspension was "not a 'reasonable specified period,' given the judicial officer's deviation from the requirements of his own sanction policy and the facts of this case." 601 F.3d at 805. The sanction policy, set forth in In re: S.S. Farms Linn County, Inc., required the judicial officer "(1) to examine the nature of the violations in relation to the remedial purposes of the PSA, (2) to consider all relevant circumstances, and (3) to give appropriate weight to the recommendations of the administrators of the PSA." Syverson I, 601 F.3d at 804 (citing S.S. Farms Linn Cnty., 50 Agric. Dec. 476, 497 (1991)). The judicial officer did not address the first factor, leaving us "only to speculate how Syverson's violations relate[d] to the remedial purposes of the PSA." Id. Moreover, the judicial officer failed to consider all relevant circumstances, particularly the nature of Syverson's violation and the effect the suspension would have on him. Id. at 804-05.

On remand, the judicial officer applied the sanction policy set forth above.[1] Syverson contends, however, that the judicial officer again failed to consider the first factor. Although his discussion of the issue is not lengthy, the judicial officer considered the nature of Syverson's violations in relation to the remedial purposes of the Act. Syverson owed a fiduciary duty to Quam, but he repurchased cattle from his own consignment for sale to Quam, without disclosing his conflict of interest. The judicial officer concluded that this unfair and deceptive practice related to the purpose of assuring fair trade practices in livestock marketing. Decision and Order on Remand at 4. Moreover, he found that Syverson "thwarted the Secretary of Agriculture's ability to enforce the Packers and Stockyards Act when he failed to produce records, which he was required to keep, for examination by United States Department of Agriculture investigators." Id. at 4-5. The judicial officer ultimately concluded that a significant period of suspension was necessary.

_____

[1] We find Syverson's contention that the judicial officer relied on the "severe" sanction policy, which was abandoned in 1991, to be without merit. See S.S. Farms Linn Cnty., 50 Agric. Dec. at 497 ("[R]eliance will no longer be placed on the 'severe' sanction policy set forth in many prior decisions . . . .").

-4-

Syverson further contends that the Act seeks to prevent unfair price increases to consumers. So, although he concedes that he violated the Act when he failed to disclose his self-interested transactions to Quam, he maintains that he charged Quam a fair price and that his violations would have been cured if he had disclosed his conflict of interest to Quam. Regardless of whether the price was fair, his violation "involved price manipulation resulting in ill-gotten gain for him and economic harm to his customer." Syverson I, 601 F.3d at 804. Accordingly, it inhibited fair trade and can fairly be described as a practice the Act was designed to remedy. See United States v. Donahue Bros., 59 F.2d 1019, 1022 (8th Cir. 1932) ("In the case of stockyards the evils to be dealt with are a multiplicity of more or less minor matters . . . and minor injustices against shippers and purchasers, which, if to be remedied effectively must be dealt with promptly.") (quoting comments by the Chairman of the House Committee on Agriculture, speaking for his committee with reference to the Packers and Stockyards Act). We thus conclude that the judicial officer adequately considered the nature of the violations in relation to the remedial purposes of the PSA.

Syverson next contends that the suspension is too harsh, given the circumstances of the violation. In Syverson I, we concluded that the judicial officer failed to consider all relevant circumstances, including that Syverson's violations were limited to one customer and involved a relatively small number of livestock and that a five-year suspension would likely bankrupt Syverson. 601 F.3d at 804-05. We emphasized that "the nature of the conduct in question is crucially important, as well as the effect of the proposed sanction on the registrant." Id. at 804.

Although a sixteen-month suspension is a significant sanction, the judicial officer considered the circumstances we instructed him to consider. Syverson urges us to compare his suspension to the cases in which we reversed much shorter suspensions. See Ferguson v. U.S. Dep't of Agric., 911 F.2d 1273 (8th Cir. 1990) (six months); W. States Cattle Co. v. U.S. Dep't of Agric., 880 F.2d 88 (8th Cir.

1989) (six months); Farrow v. U.S. Dep't of Agric., 760 F.2d 211 (1985) (forty-five days).  But the judicial officer adequately distinguished those cases, see In re Todd Syverson, P&S Docket No. D-05-0005, 7-8 (Dec. 22, 2010) (Order Denying Reconsideration of Decision and Order on Remand), and the Supreme Court has held that "mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law.'"  Butz, 411 U.S. at 189.

If not unwarranted in law, Syverson must show that the sanction is unjustified in fact.  He cannot do so.  After weighing the nature of the violation and the effect of the suspension on Syverson, the judicial officer imposed a sanction that he believed would ensure Syverson's compliance with the Act without necessarily forcing him from the industry.  In determining the sanction, the judicial officer considered the facts that the deception involved only one purchaser and twenty-four cows.  He concluded that those mitigating "factors form[ed] part of the basis for my reduction of the five-year period of suspension which I imposed on Mr. Syverson." Decision and Order on Remand at 5-6.  The judicial officer also considered Syverson's argument that a suspension would be devastating for his family against GIPSA's argument that a two-year suspension likely would not bankrupt Syverson or visit extreme hardship on his family.  Id. at 6-7 (citing GIPSA's evidentiary showing in support of its argument).  Ultimately, the judicial officer concluded that Syverson's "violations are serious and, in my view, a significant period of suspension as a registrant . . . is necessary to deter Mr. Syverson and others from violating the [Act], even if the suspension poses some risk that Mr. Syverson may declare bankruptcy and poses a threat to Mr. Syverson's livelihood." Id. at 7.  Syverson thus has failed to show that the suspension "was so without justification in fact as to constitute an abuse of the Secretary's discretion." Butz, 411 U.S. at 188 (quoting Am. Power Co., 329 U.S. at 115) (internal quotations and alteration omitted).

Finally, Syverson argues that the judicial officer abused his discretion by considering the prior cease and desist order involving Syverson and by failing to

consider Syverson's "lack of notice that his actions were in breach of a fiduciary duty." Appellant's Br. 31. In <u>Syverson I</u>, we said, "These serious offenses are deserving of a significant sanction, especially in light of the prior cease and desist order for price manipulation that had been imposed upon Syverson." 601 F.3d at 805. We also concluded that Syverson was on notice that his actions were unlawful. <u>Id.</u> at 803 n.6. Our prior panel decision thus has foreclosed these arguments.

## III.

The sanction is affirmed.

_____