**MANDEL BROTHERS, Inc., a corporation, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 12128.

United States Court of Appeals Seventh Circuit.

April 1, 1958.

Rehearing Denied May 1, 1958.

William G. Blood, Chicago, Ill., Samuel H. Horne, Washington, D. C., Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., of counsel, for petitioner.

James E. Corkey, Asst. General Counsel, Alvin L. Berman, Attorney, Federal Trade Commission, Washington, D. C., Earl W. Kintner, General Counsel, Washington, D.C., for respondent.

Before DUFFY, Chief Judge, and SCHNACKENBERG and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

The petitioner, Mandel Brothers, Inc., is a Delaware corporation. It owns and operates a large department store in Chicago, Illinois with annual sales of approximately $32,000,000. It has two fur departments, one on the fifth floor and the other in the basement.

The petitioner is here seeking to set aside a cease and desist order entered July 5, 1957 under the Fur Products Labeling Act, Title 15 U.S.C.A. § 69 et seq. by the respondent Federal Trade Commission. There are five contested issues.

The first is whether the petitioner's activities constitute interstate commerce subject to the jurisdiction of the Federal Trade Commission.

The parties stipulated that furs and fur products sold by petitioner were shipped to and received by it from outside the State of Illinois. Petitioner's fur department managers testified that they went to New York City ten or twelve times a year to buy furs for their departments and that most of the furs that are sold in the petitioner's store are bought there. There was also evidence that the petitioner advertised in the Chicago Tribune, the Chicago Sun-Times and the Chicago American, all of which, as stipulated by the parties, have interstate circulation and that furs were sold to non-residents of Illinois and sent to an out of state address. The witness Hill, manager of petitioner's fifth floor fur department, testified that Commission's Exhibit 12, a sales slip, had no Illinois sales tax thereon and therefore the goods would have to be delivered outside the State of Illinois. Commission's Exhibits 19 and 20 also show similar sales to residents of Indiana upon which no Illinois sales tax had been charged. Accordingly there was ample evidence in the record from which the Commission could find that the petitioner was engaged in interstate commerce. De Gorter v. Federal Trade Commission, 9 Cir., 1957, 244 F.2d 270. The case of Federal Trade Commission v. Bunte Brothers, 1941, 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881, cited by the petitioner is inapposite in that Bunte Brothers' sales were made exclusively in Illinois.

The second issue is whether the Commission's Rule 44 under the Act is a valid exercise of the authority delegated to the Commission.

Section 8(b) of the Act authorizes the Commission to prescribe, *inter alia,* such rules and regulations as may be necessary and proper for purposes of the administration and enforcement of the Act.

Section 5(a) (5) provides:

"For the purposes of [this Act] a fur product or fur shall be considered to be falsely or deceptively advertised if any advertisement * * * which is intended to aid, promote, or assist directly or indirectly in the sale or offering for

sale of such fur product or fur \* \* contains any form of misrepresentation or deception, directly or by implication, with respect to such fur product or fur; \* \* \*."

We agree with the Ninth Circuit in De Gorter when it said, "the intention was to reach all *misrepresentations in advertising*, including those relating to prices and value. If any doubt exists about the matter the clause under consideration indicates the intention to include them. The Commission was right in so interpreting the statute and acted within its powers in promulgating the rule under discussion." [244 F.2d 279.]

The Commission found that certain fur products sold by the petitioner for $244 were the same ones advertised in the Chicago Tribune on October 2, 1954 as "Usually $299 to $399" the net effect of which was to mislead and deceive purchasers as to the amount of savings to be realized. We believe that finding is supported by substantial evidence. Mandel called its manager of the fifth floor fur department as a witness but made no attempt to prove these garments were usually sold at $299 to $399. Petitioner's contention that the issue here is not the regular and usual price of the specific garments sold by Mandel but the regular and usual price of similar or comparable garments fails inasmuch as the customer would make no such distinction. Moreover, there is no evidence in this record that the regular and usual price of similar or comparable garments was $299 to $399.

The third issue is whether the evidence as to labeling, invoicing, advertising and record-keeping is such as to warrant and support the Commission's cease and desist order.

What we have held as to advertising is dispositive of that question. The evidence of Mandel's fur salon manager that Mandel had no definite records showing the garments that had been sold at the advertised price gives adequate support to the order of the Commission as to inadequate record-keeping.

As to the labeling the Hearing Examiner found that Mandel had not violated subdivisions (B), (D) and (E) of § 4(2) of the Act and his cease and desist order did not include these subdivisions. The Commission, on appeal, specifically found that there was no evidence as to violations of these same subdivisions but did include them in its cease and desist order. The Supreme Court in its opinion in Federal Trade Commission v. Ruberoid Co., 1952, 343 U.S. 470, 473, 72 S.Ct. 800, 803, 96 L.Ed. 1081, held that, "the Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past" and also in Federal Trade Commission v. National Lead Co., 1957, 352 U.S. 419, 431, 77 S.Ct. 502, 510, 1 L.Ed.2d 438 "that those caught violating the Act must expect some fencing in." However, here the Commission specifically found that there was no evidence of any violation of subdivisions (B), (D) and (E) of § 4(2). We find no difficulty in subscribing to the doctrine that a cease and desist order does not have to be limited to the illegal practice in the precise form it is found to exist or that those caught violating the Act must expect some fencing in but we cannot affirm an order requiring one to cease and desist from doing that which the Commission specfically found it did not do.

The petitioner concedes that it has violated subdivisions (A), (C) and (F) of § 4(2) and Rules 4 and 29 promulgated under § 8(b). It attempts to excuse its violations upon the ground that they are technical and trivial. If such an excuse were valid the enforcement of the Act would be virtually impossible. In this we find no merit.

The Commission contends that when Mandel failed to place certain information upon the sales slip given to the consumer that constituted a violation of § 3(b) of the Act. Petitioner argues that a sales slip is not an "invoice" within the meaning of the Act. The word "invoice" has an accepted meaning in the commercial world. It is a written

account or itemized statement of merchandise shipped or sent to a purchaser or consignee with the quantity, value or prices and charges set forth. However, the Fur Products Labeling Act defines the term and we must look to that definition for its meaning.

Section 2(f) of the Act defines "invoice" as:

"a written account, memorandum, list, or catalog, *which is issued in connection with any commercial dealing* in fur products or furs, and describes the particulars of any fur products or furs, transported or delivered to a purchaser, * * * or any *other* person *who is engaged in dealing commercially in fur products or furs.*" (Our emphasis.)

 This statutory definition is plain and unambiguous and to come within its terms an "invoice" must be something issued in connection with a commercial dealing to a purchaser or any *other* person who is engaged in *dealing commercially.* Under no circumstances is a sales slip given to a customer by a retailer a written account, memorandum, list, or catalog issued in connection with a commercial dealing. An invoice is not brought down to the retail level by this section.

 The respondent attempts to buttress its position with excerpts from hearings before a congressional committee. However, when the language used in a statute is clear and unambiguous its legislative history cannot control the interpretation as "such aids are only admissible to solve doubt and not to create it." Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy Railroad Company, 1922, 257 U.S. 563, 589, 42 S.Ct. 232, 238, 66 L.Ed. 371. "In proper cases, such reports are given consideration in determining the meaning of a statute, but only where that meaning is doubtful. They cannot be resorted to for the purpose of construing a statute contrary to the natural import of its terms." United States v. Shreveport Grain & Elevator Co., 1932, 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175. There is no doubt as to the meaning of "invoice" as defined by the statute. It is clearly not a sales slip at the retailer-customer level.

 We agree with the Commission that a limiting clause is to be restrained to the last antecedent unless the subject requires a different construction. If the last antecedent were "any person" instead of "any other person" the word "purchaser" might not be limited to one engaged in dealing commercially in fur products or furs. However, when the statute says purchaser or any *other* person who is so engaged the limitation clearly applies to *purchaser.* No other meaning is possible particularly when "invoice" is also defined by the Act as something *which is issued in connection with any commercial dealing* in fur products or furs.

The fourth issue is whether the Commission, having found that there was no evidence of certain violations, properly included prohibition of those violations in its cease and desist order. As the order must be modified and those portions deleted therefrom pursuant to our determination of the third issue consideration of this issue is no longer necessary.

The fifth issue is whether the Commission properly imposed its cease and desist order on Mandel's officers, representatives, agents and employees when only Mandel itself was named in the complaint.

 The petitioner is a corporation. A corporation can act only through its agents. This rule of law is so elementary that citation of authorities is certainly not required.

We did hold in R. J. Reynolds Tobacco Co. v. Federal Trade Commission, 7 Cir., 1951, 192 F.2d 535, 540 that the Commission was without authority to include officers, agents, representatives and employees in its cease and desist order. We did make a distinction in Anchor Serum Company v. Federal Trade Commission, 7 Cir., 1954, 217 F.2d 867, 874. We have given careful consideration to

the question and have come to the conclusion that we were in error in Reynolds. Accordingly so much of our decision therein as pertains to this question is overruled.

We hold that the Commission did have the power to include in its cease and desist order Mandel's officers, representatives, agents and employees.

The cease and desist order here under review is hereby ordered modified by deleting therefrom subdivisions (b), (d) and (e) of subsection 1 of A and all of B.

The order as modified is affirmed.