**BANKERS SECURITIES CORPORATION, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 13538.**

United States Court of Appeals
Third Circuit.

Argued Sept. 19, 1961.

Decided Dec. 18, 1961.

Louis J. Goffman, Philadelphia, Pa., (Burton Caine, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., on the brief), for petitioner.

Thomas F. Howder, Washington, D. C., (James McI. Henderson, Gen. Counsel, Alan B. Hobbes, Asst. Gen. Counsel, Washington, D. C., on the brief), for the Federal Trade Commission.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This petition for review of a cease and desist órder of the Federal Trade Commission asks that we overturn the Commission's finding that certain department store advertising was false and deceptive or, at least, that we modify the broad language of the order.

The charge in this case dealt with certain advertising of carpeting by Snellenburgs, a large department store with retail outlets in the city and suburbs of Philadelphia. The order of the Commission runs against petitioner, Bankers Securities Corporation, since the Commission found that this Pennsylvania corporation, while engaged primarily in the real estate business, "operates, as a division, separate and distinct from all its other activities, a retail department store in Philadelphia known as 'Snellenburgs'".

The advertising in question, which related to sales of carpeting, was published in a Philadelphia newspaper on three occasions during the fall of 1956. Certain of the carpeting was offered for sale at $10.89 or $10.95 per square yard. Each advertisement also stated that this carpeting was "regularly" or "usually" sold at prices between $15.95 and $16.95 per square yard. It is this representation that the Commission found false and deceptive.

Petitioner admits that Snellenburgs had no "regular" or "usual" price of its own for the described item because the challenged advertisement was its first offering of carpeting of that type and quality. However, at other retail stores in Philadelphia, the normal recently prevailing price of such carpeting had been from $15.95 to $16.95 per square yard. Thus, if the public understood the words "regular" and "usual" as referring to prices prevailing in the community, the advertisement conveyed a correct impression. But, if the advertisement was understood to refer to Snellenburgs' own normal prices, its connotation was false. The Commission concluded that, as a matter of fact, the latter meaning was conveyed by the words "regular" and "usual". Accordingly, it prohibited the use of these words in future pricing except in

truthful statement of the advertiser's own recent normal prices.

This ruling does not depend upon or even imply a finding that Snellenburgs intended to deceive. Indeed, in the circumstances of this case the advertisement correctly indicated the saving a purchaser could realize. But such indications of good faith are not controlling. If different merchants may use the words "regular" and "usual" at different times to indicate either their own normal prices or the normal prices of their competitors, confusion, detrimental to buyers and sellers alike, may well be created as to the meaning of much advertising. Moreover, if the advertiser intends to compare his present selling price with the normal prices of competitors, it is not difficult or burdensome for him to use words that make this clear. All of these factors make this the type of case in which a court should not interfere with the informed judgment of an administrative body that is experienced and expert in evaluating the impact of advertising practices and in framing equitable advertising requirements that serve the public interest. Cf. Jacob Siegel Co. v. F. T. C., 3d Cir., 1944, 150 F.2d 751, rev'd on other grounds, 1946, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888.

■ We have not overlooked the petitioner's additional argument that the Commission's finding of deception was unjustified because the advertisements bore banner headlines indicating that the advertised merchandise represented large surplus stocks acquired from certain mills and distributors. But we are not persuaded that in the reader's mind this identification of the merchandise must have or even should have negated the implication that Snellenburgs itself had previously sold such carpeting at the stated "regular" or "usual" prices. We are satisfied that on the entire record the finding of deception was reasonable and, therefore, must be sustained. Accord, The Fair v. F. T. C., 7th Cir., 1960, 272 F.2d 609, 612–613; cf. Mandel Bros., Inc. v. F. T. C., 7th Cir., 1958, 254 F.2d 18, 21, rev'd on other grounds, 1959, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893.

■ We next consider the scope of the Commission's order. It reads as follows:

'IT IS ORDERED that respondent, Bankers Securities Corporation, a corporation, and its officers, representatives, agents and employees, directly or through any corporate or other device, in connection with the offering for sale, sale, or distribution of carpets, rugs, or other merchandise, in commerce, as 'commerce' is defined in the Federal Trade Commission Act [15 U.S.C.A. § 41 et seq.], do forthwith cease and desist from:

"Representing in any manner that certain amounts are the regular and usual retail prices of merchandise sold by any store operated or controlled by respondent when such amounts are in excess of the prices at which such merchandise has been usually and regularly sold by that store at retail, in the recent regular course of its business."

Petitioner first argues that isolated advertisement of a particular item for a brief period is not enough to justify a cease and desist order applicable, as this one is, to all of Snellenburgs' future advertising. We need not reach this question because the record clearly shows that these advertisements were not isolated or extraordinary occurrences. On this matter the testimony of the executive head of Snellenburgs is explicit:

"Q. Are there instances where you take a product which you do not usually sell and use the words 'regular' and 'usual' price for that product? A. Yes, that happens constantly."

We conclude, therefore, that in its comprehensive application to all of Snellenburgs' advertising, the cease and desist order is no broader than the deceptive practice had been and, therefore, is proper.

It remains to consider whether there is justification in the record for making the

order so broad that it covers the advertising practice of "any store operated or controlled" by Bankers Securities Corporation.

The record lacks evidence of the relationship of Bankers Securities Corporation to any store other than Snellenburgs. We have already mentioned that the Commission found that the "respondent is engaged primarily in the real estate business, but operates, as a division, separate and distinct from all its other activities, a retail department store in Philadelphia known as 'Snellenburgs'". Certainly this does not imply that petitioner operates other retail stores, but rather, the contrary. However, in a colloquy concerning the possible scope of any order that might be entered in this case, counsel for respondent stated to the Commission:

"Bankers Securities has wide stock interest not only in real estate firms but in other stores throughout the United States, some of which engage in retail selling and because there may be a store in Tucson, Arizona or in Seattle, Washington in which Bankers Securities owns 30 or 40 percent of the stock or even 100 percent of the stock, it would seem to have nothing in the world to do with this order and we want to be perfectly clear even if an order is entered in this case, it couldn't possibly be read to bind that store out in Tucson or up in Seattle, Washington, which had nothing to do with this case."

In the entire record we have found nothing else concerning the relationship between the respondent and stores other than Snellenburgs.

At best, then, the Commission can argue that respondent has admitted being a stockholder in other corporations which themselves own and operate retail stores. There is no showing that such stock ownership gives the respondent effective control over any such operating corporation. It does not appear that respondent in fact exercises authority over management functions, particularly advertising practices and polices, of any such operating corporation. Yet, in this state of the record, the Commission has issued an order that may arguably subject the respondent to a contempt citation if at any time in the future another corporation, in which it owns a substantial stock interest, does what Snellenburgs has done. And this risk is imposed despite the fact that, even in the case of Snellenburgs, respondent has not disclosed any purpose to do wrong or to persist in prohibited conduct. The circumstances here provide no justification for an order covering enterprises other than Snellenburgs. In this aspect, "the remedy selected has no reasonable relation to the unlawful practices found to exist". See Jacob Siegel Co. v. F. T. C., 1946, 327 U.S. 608, 613, 66 S.Ct. 758, 760, 90 L.Ed. 888.

The principal paragraph of the order of the Commission shall be modified to read as follows:

"IT IS ORDERED that, Bankers Securities Corporation, a corporation, and its officers, representatives, agents and employees, directly or through any corporate or other device, in connection with the offering for sale, sale, or distribution of carpets, rugs, or other merchandise by the department stores known as Snellenbergs, in commerce, as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

"Representing in any manner that certain amounts are the regular and usual retail prices of merchandise sold by Snellenburgs when such amounts are in excess of the prices at which such merchandise has been usually and regularly sold by Snellenburgs at retail, in the recent regular course of its business."

As thus modified the order of the Commission will be affirmed and obedience to its terms will be commanded by this court.