The **REGINA CORPORATION**, a corporation of the State of Delaware, Petitioner,

v.

**FEDERAL TRADE COMMISSION**, Respondent.

No. 14254.

United States Court of Appeals Third Circuit.

Argued June 4, 1963.

Decided Aug. 19, 1963.

Rehearing Denied Sept. 12, 1963.

As Amended Sept. 18, 1963.

Chester Mueller, Toms River, N. J., for petitioner.

J. Richard Carr, Federal Trade Com., Washington, D. C. (James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Miles J. Brown, Attys., on the brief), for Federal Trade Commission.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The issues presented by this appeal are whether substantial evidence supports the Federal Trade Commission's finding that petitioner violated Section 5 of the Federal Trade Commission Act [1] in that it had misrepresented, and placed in the hands of others certain price lists that were used to misrepresent, the usual and customary retail prices for petitioner's products; and if so, whether the Commission's cease and desist Order is valid and proper in scope.

On March 14, 1961, the Federal Trade Commission issued its Complaint alleging that petitioner had engaged in the practice of supplying its distributors and retailers with fictitious "manufacturer's list prices" or "suggested list prices", thereby representing, directly or by implication, that such "list" prices were the usual and customary retail prices for its merchandise, and that petitioner, by engaging in this practice, placed in the hands of retailers and others the means and instrumentalities by and through which they misled the public as to the usual and customary retail prices for its electric floor polishing machines and vacuum cleaners.

The petitioner admitted that it furnished suggested list prices but denied that such prices were fictitious, or that they purported to be the usual and customary prices for the products involved, or that it provided to others the means and instrumentalities by and through which the public was misled.

The evidence adduced before the Hearing Examiner may be summarized as follows:

Petitioner manufactures electric floor polishers and vacuum cleaners, marketed through wholesalers and retailers to whom it supplied list prices, since 1958 called "suggested list prices"; consumers were informed of suggested list prices through the medium of newspaper advertisements published and sponsored by retailers handling petitioner's products; the sale price, usually lower than the suggested list price, was inserted in the advertisements in juxtaposition with the suggested list price, variously referred to as a "list price" or "Manufacturer's list price" or "Mfg. List"; petitioner at times contributed to the cost of the advertisements; petitioner knew that retailer adherence to the suggested

[1]. 15 U.S.C.A. § 45.

list price was the exception rather than the rule; and "gullible" people could believe that the suggested list price was the "going price".

The Commission found that petitioner represented its "suggested list prices" as the usual and customary prices although it "was aware that the usual and customary prices for its products were generally lower \* \* \*", and concluded that the dissemination of suggested list prices injured the public and constituted "unfair and deceptive acts and practices and unfair methods of competition in commerce within the intent and meaning of the Federal Trade Commission Act." [2]

■■■ We are of the opinion that the record, viewed as a whole, supports the Commission's findings.[3] To the extent that petitioner contributed towards the cost of misleading advertisements, it was equally responsible with its retailers for the deceptive character of the representations that appear therein. The vice inherent in the representations is the inability of the "gullible" price-conscious consumer to control his urge to make what he erroneously may believe is a good buy, Helbros Watch Company v. Federal Trade Commission, 310 F.2d 868 (D.C. Cir., 1962), cert. den. 372 U.S. 976, 83 S.Ct. 1110, 10 L.Ed.2d 142ª (1963). The courts have upheld the Commission's proscriptions on advertising, not only when there is proof of actual deception, but also when the representations made have a capacity or tendency to deceive, Federal Trade Commission v. Sterling Drug, Inc. 317 F.2d 669 (2 Cir., 1963); Goodman v. Federal Trade Commission, 244 F.2d 584, 604 (9 Cir., 1957). It is now settled that deception may be ac-

complished by innuendo rather than by outright false statements. See Bakers Franchise Corporation v. Federal Trade Commission, 302 F.2d 258, 261 (3 Cir., 1962).

■■ With respect to those instances where petitioner did not contribute to the cost of misleading advertising, it is settled that "One who places in the hands of another a means of consummating a fraud or competing unfairly in violation of the Federal Trade Commission Act is himself guilty of a violation of the Act.", C. Howard Hunt Pen Co. v. Federal Trade Commission, 197 F.2d 273, 281 (3 Cir., 1952); see Federal Trade Commission v. Winsted Hosiery Company, 258 U.S. 483, 494, 42 S.Ct. 384, 66 L.Ed. 729 (1922). Proof of petitioner's intention to deceive is not a prerequisite to a finding of a violation, Pep Boys—Manny, Moe & Jack, Inc. v. Federal Trade Commission, 122 F.2d 158, 161 (3 Cir., 1941); it is sufficient that deception is possible. Bankers Securities Corporation v. Federal Trade Commission, 297 F.2d 403, 405 (3 Cir., 1961).

■ The purpose of the Federal Trade Commission Act is to protect the public, not to punish a wrongdoer, Gimbel Bros. v. Federal Trade Commission, 116 F.2d 578, 579 (2 Cir., 1941), and it is in the public interest to stop any deception at its incipiency. See Progress Tailoring Co. v. Federal Trade Commission, 153 F.2d 103, 105 (7 Cir., 1946).

What has been said brings us to the second issue presented—the scope of the Commission's order, which petitioner challenges as "discriminatory—vague—indefinite—unduly broad—and unconstitutional."

2. The pertinent provisions of the Act are as follows:

"Sec. 5(a) (1). Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." 66 Stat. 632 (1952), 15 U.S.C.A. § 45(a) (1).

"Sec. 5(a) (6). The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, \* \* \* from using unfair methods of competition in commerce and un-

fair or deceptive acts or practices in commerce." 66 Stat. 632 (1952), 15 U.S.C.A. § 45(a) (6).

"Sec. 5(c) \* \* \* The findings of the Commission as to the facts, if supported by evidence, shall be conclusive" 52 Stat. 113 (1938), 15 U.S.C.A. § 45(c).

3. 5 U.S.C.A. § 1009(e); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Order, in relevant parts, directs petitioner to cease and desist from:

"Supplying to, or placing in the hands of, any distributor or retailer any tabulation of figures, sales literature, price list or other material containing 'manufacturer's list prices,' 'manufacturer's suggested list prices,' 'suggested list prices,' or 'suggested retail prices,' when said respondent [petitioner] knows or has reason to know, that such figures are in excess of the price or prices at which the items of merchandise to which they refer are usually and customarily sold at retail in the trade areas where the figures are supplied."

With respect to petitioner's contention that the Order is discriminatory, the short answer is that petitioner has not presented sufficient evidence to demonstrate that it has in fact been "singled out". But in any event—in the absence of a patent abuse of discretion—"[T]he Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress * * *." Moog Industries, Inc. v. Federal Trade Commission, 355 U.S. 411, 413, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1958). Courts will not ordinarily refuse to enforce a valid order merely because the law is not being enforced against others. See Jaffe, The Judicial Enforcement of Administrative Orders, 76 Harv.L.Rev. 865, 878 (1963).

As to the contention that the Order is vague, indefinite and unduly broad and that "it is impossible to obey without completely sacrificing the preparation and dissemination of [suggested] list prices", we, as well as other courts of appeals, have enforced orders in analogous cases where the words "usual and customary" were used, as here, in relation to prices charged at retail in a particular "trade area". Bankers Securities Corporation v. Federal Trade Commission, supra; Baltimore Luggage Company v. Federal Trade Commission, 296 F.2d 608 (4 Cir., 1961), cert. den. 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 17 (1962); Helbros Watch Company v. Federal Trade Commission, supra; Giant Food, Inc. v. Federal Trade Commission, D.C.Cir., 322 F.2d 977 (1963). Moreover, the Supreme Court has ruled that the Commission is clothed with wide discretion in determining the type of order that is necessary to bring to an end the unfair practices found to exist.

In Federal Trade Commission v. Rubberoid Co., 343 U.S. 470, p. 473, 72 S.Ct. 800, p. 803, 96 L.Ed. 1081 (1952) the Court said:

"If the Commission is to attain the objectives Congress envisioned, * * * it must be allowed effectively to close all roads to the prohibited goal, so that its order[s] may not be bypassed with impunity."

In Jacob Siegel Co. v. Federal Trade Commission, 327 U.S. 608, pp. 611, 612, 613, 66 S.Ct. 758, pp. 759, 760, 761, 90 L.Ed. 1888 (1946), the Court said:

"The Commission has wide discretion in its choice of a remedy deemed adequate to cope with the unlawful practices in this area of trade and commerce. Here, as in the case of orders of other administrative agencies under comparable statutes, judicial review is limited. It extends no further than to ascertain whether the Commission made an allowable judgment in its choice of the remedy. * * * Congress has entrusted it [the Commission] with the administration of the Act and has left the courts with only limited powers of review. The Commission is the expert body to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed. It has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist."

We cannot say that in the instant case the Commission in framing its Order violated the permissible limits of

its discretion,[4] nor can we say that though it may be drastic in its sweep, it is not reasonably related to the deception which the Commission has found to exist. Arrow Metal Products Corporation v. Federal Trade Commission, 249 F.2d 83 (3 Cir., 1957).

It may turn out that petitioner's fears are more hypothetical than real for it has not been urged that the use of suggested list prices is illegal per se. The dissemination of these prices is prohibited only so long as they create a false or deceptive impression upon the consumer. In coping with the Order, petitioner, in addition to exercising its own sound business judgment, may seek advice and aid from the Commission, Giant Food, Inc. v. Federal Trade Commission, supra; Vanity Fair Paper Mills, Inc. v. Federal Trade Commission, 311 F.2d 480 (2 Cir., 1962), and present any problems of compliance "in evidentiary form rather than fantasies."[5] The Commission is not bound beforehand "to chart a course for the petitioner." Cf. Zenith Radio Corporation v. Federal Trade Commission, 143 F.2d 29, 31 (7 Cir., 1944).

The petitioner's contention that the Commission's Order deprives it of the right to express its opinion of the "market worth" of its products, at retail, via its suggested list price, and that such deprivation is in violation of the freedoms of speech and press guarantees of the First Amendment, is without substance. The Commission's Order does not foreclose the petitioner's expression of its opinion as to the retail worth of its products but seeks only to insure that such an opinion will not mislead or deceive the public. There is no constitutional right to promulgate and distribute fictitious suggested list prices. Cf. Murray Space Shoe Corporation v. Federal Trade Commission, 304 F.2d 270, 272 (2 Cir., 1962) where it was said "There is no constitutional right to disseminate false or misleading advertisements."

It would serve no useful purpose to discuss petitioner's other points.

For the reasons stated the Commission's Order will be affirmed and enforced.

4. In Bankers Securities Corporation v. Federal Trade Commission, 297 F.2d 403, 405 (3 Cir., 1961) we stated:

"All of these factors make this the type of case in which a court should not interfere with the informed judgment of an administrative body that is experienced and expert in evaluating the impact of advertising practices *and in framing equitable advertising requirements that serve the public interest.*" (emphasis supplied)

5. Federal Trade Commission v. National Lead Company, 352 U.S. 419, 431, 77 S.Ct. 502, 510, 1 L.Ed.2d 438 (1957). In this case the Supreme Court went on to add:

"[I]f there is a burden that cannot be made lighter after application to the Commission, then [petitioner] must remember that those caught violating the Act must expect some fencing in."