9 F.3d 1551
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
MAGUI PUBLISHERS, INC.; Pierre Marcand, Defendants-Appellants.
 No. 91-55474.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1993.
Decided Oct. 22, 1993.
 
 1
 Before: HALL and RYMER, Circuit Judges, and FITZGERALD,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Magui Publishers and Pierre Marcand (collectively, "Magui") appeal from a final judgment after a bench trial in an action by the Federal Trade Commission (FTC) under sections 5 and 13(b) of the FTC Act, 15 U.S.C. §§ 45 and 53(b), for injunctive relief and disgorgement of earnings on account of deceptive practices in the sale of art prints. We affirm.
 
 
 4
 * Beginning in approximately 1983, Magui Publishers and Pierre Marcand, its president and owner, distributed a series of limited edition etchings and lithographs which reproduced works by Salvador Dali. The works were reproduced on paper which Dali had purportedly pre-signed. Each work was accompanied by a Certificate of Authenticity and Tirage which identified the artist as "Salvador Dali." In fact, Dali had no connection with the production of Magui's prints.
 
 
 5
 Twenty-eight of the thirty-two Dali editions at issue are etchings; the other four editions are lithographs. The etchings were produced in France by Pierre Spalaikovitch, an engraver, and Pascal Giraudon, a printmaker. Each etching includes an attribution line stating that it was "by Dali," that it was "engraved by atelier Spalaikovitch," and that Giraudon was the printer and Magui the publisher. The lithographs do not include an attribution line.
 
 
 6
 The district court entered a temporary restraining order and then a preliminary injunction appointing a receiver for Magui and freezing its assets. Following a bench trial, the district court entered final judgment on March 29, 1991, ordering Magui and Marcand to pay $1.96 million in restitution and enjoining them from further misrepresentations. This timely appeal followed.
 
 II
 
 7
 Magui contends that because the district court adopted verbatim the FTC's proposed findings of fact and conclusions of law, the findings should be reviewed under a less deferential standard than the clearly erroneous standard. The Supreme Court stated in Anderson v. City of Bessemer City, 470 U.S. 564 (1985) that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Id. at 572. However, this court has stated that although review is for clear error when findings are adopted verbatim, " 'close scrutiny' of the record is appropriate." Kern Oil & Refining Co. v. Tenneco Oil Co., 792 F.2d 1380, 1385-86 (9th Cir.1986), cert. denied, 480 U.S. 906 (1987); see also General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 n. 2 (9th Cir.1986) ("When, as in this case, the district court has adopted the findings of the prevailing party verbatim we review the findings with special scrutiny.").
 
 
 8
 A district court's evidentiary rulings "are reviewed for abuse of discretion and will not be reversed absent prejudice." Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988).
 
 
 9
 Questions of law are reviewed de novo. Anderson v. United States, 966 F.2d 487, 489 (9th Cir.1992).
 
 III
 
 10
 and
 
 
 11
 Magui argues that the FTC was not permitted to take judicial action in this case, but was instead required to forbid the practices in which Magui had engaged by administrative rulemaking. Magui relies on the decision in Ford Motor Co. v. FTC, 673 F.2d 1008 (9th Cir.1981), cert. denied, 459 U.S. 999 (1992), but Ford is inapplicable to the present case, in which the practices which the FTC seeks to forbid--misrepresentation of the origin of works of art--are plainly illegal. The present adjudication does not "change[ ] existing law" or "ha[ve] widespread application." Id. at 1010. Judicial action by the FTC was therefore proper.
 
 B
 
 12
 Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Deception is found "if there is a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances." Southwest Sunsites, Inc. v. FTC, 785 F.2d 1431, 1435 (9th Cir.) (original emphasis), cert. denied, 479 U.S. 828 (1986).
 
 
 13
 Magui contends that it never suggested that its prints were created by Dali. It argues that the FTC's customer witnesses acknowledged that they knew that the prints were not created by Dali; that the attribution line of its etchings disclosed the identity of the artists who created the prints; and that its promotional materials and 1987 letter to retailers specifically stated that the prints were produced on paper pre-signed by Dali.
 
 
 14
 These arguments are not persuasive, because the district court's decision did not rest on a finding that Magui represented that Dali actually created the prints which it sold. Rather, it turned on Magui's misrepresenting that Dali was involved in or authorized the production of Magui's prints.
 
 
 15
 Even under "close scrutiny," the court did not clearly err in finding that Magui misrepresented Dali's involvement in the production of its prints. The certificate accompanying each print referred to the artist as "Salvador Dali" and each etching contained "by Salvador Dali" as part of its attribution line. These representations are misleading both as a matter of common sense and under the definition of "artist" in state print statutes. See Cal.Civ.Code § 1740(d) (" 'Artist' means the person who created ... or conceived of, and approved the image which is contained in, or constitutes, the master."); N.Y. Arts & Cult.Aff.Law § 11.01(1) (" 'Artist' means ... the person who conceived or created the image which is contained in or which constitutes the master from which the individual print was made."). It is undisputed that Dali had no involvement, supervisory or otherwise, in the production of Magui's master etching and lithograph plates. Second, regardless of whether the Dali signatures on Magui's prints were real, the signatures contributed to the impression that Dali had approved Magui's prints. Third, Marcand and other Magui employees stated or implied to customers that Dali was involved in the printmaking process. Finally, Magui's promotional literature implied a close connection between Magui and Dali. In view of this evidence, the district court's finding that Magui deceptively misrepresented its association with Dali was not clearly erroneous.
 
 C
 
 16
 Magui claims error in a number of other respects, none of which requires reversal.
 
 
 17
 First, it contends that the district court improperly excluded the testimony of Rajad Hopkins, a Magui customer, it wanted to call in place of another customer who allegedly became unavailable. Because Hopkins was not on Magui's pretrial witness list, Magui provided no evidence of the reason for Wilcox's unavailability, and the government had had no opportunity to take discovery of Hopkins, the district court did not abuse its discretion. See Cent.Dist.Cal.Local R. 9.6 ("except for good cause shown, the testimony of any ... witness proffered at trial who is not listed upon a party's witness list shall be precluded").
 
 
 18
 Magui argues that the district court erred in finding that nine of Magui's etchings and three of its lithographs were not produced entirely by hand, but were produced in whole or in part via high-speed photographic processes. In so finding, the district court credited the testimony of the FTC's expert, Bernard Ewell, rather than that of Deli Sacilotto, Magui's expert, and Pierre Spalaikovitch, Magui's engraver. It was not clearly erroneous for the district court to resolve this conflicting testimony in favor of the FTC.
 
 
 19
 Magui next contends that two affidavits which were admitted to prove that Dali stopped signing blank paper by the end of 1979 were inadmissible hearsay. Although the district court made no findings as to the trustworthiness of the affidavits, see FTC v. Figgie Int'l, Inc., 994 F.2d 595, 608 (9th Cir.1993), our independent review shows that admission of the first Dali affidavit was within the court's discretion whereas the second was not. Id. The first affidavit, which is dated June 1985, is notarized, and states that Dali signed no blank paper after December 23, 1980. The second affidavit is dated August 1986, is not notarized, purports to clarify the first affidavit by stating that Dali did not sign blank paper during 1980, and bears a signature whose authenticity one Dali associate doubted. The first affidavit supports the FTC's contention that most (rather than all) of Magui's Dali-signed paper was produced after Dali stopped signing blank paper. Receiving the second affidavit is harmless, as the FTC introduced other evidence indicating that Dali's signatures were forged and the district court's finding that Magui misrepresented Dali's involvement in the printmaking process does not depend on the signature's being forged.
 
 
 20
 Magui further contends that the district court clearly erred by finding that Magui was deceptive in not disclosing to consumers that it produced both etchings and lithographs of certain Dali works and two different etching editions of other Dali works. The district court was required to resolve conflicting evidence, and whether it did so correctly in the case of etchings of two similar Dali paintings, "Apparition ..." and "Apparition of Face and Fruit Dish on Beach," its findings on edition size are essentially irrelevant to the fundamental misrepresentations regarding Dali's involvement.
 
 
 21
 Magui argues that the district court erred in finding that it misrepresented the value of its prints, citing United States v. Interstate Eng'g Corp., 288 F.Supp. 402, 422 (D.N.H.1967) (Wyzanski, C.J.) for the principle that mere setting of high prices may not constitute fraud. However, the district court did not clearly err in finding that Magui's representations regarding the value of its prints contributed to the misrepresentation that the prints were valuable works of art.
 
 
 22
 Magui's argument that the district court erred in focusing on Magui's failure to refer to its prints as "after" Dali or "interpretations" of Dali because neither state law nor industry practice requires it to, misses the point. It was within the district court's discretion to consider whether Magui failed to do anything to dispel the impression that Dali was involved in producing the prints.
 
 IV
 
 23
 The parties disagree about whether the district court properly concluded that Magui violated § 5(a) of the FTC Act by aiding and abetting the misrepresentations of retailers. We need not resolve this question, however, as "[i]t is well established that one who puts into the hands of others the means by which such others may deceive the public is equally as responsible for the resulting deception." Matter of Litton Indus., Inc., 97 F.T.C. 1, 48 (1981), aff'd, 676 F.2d 364 (9th Cir.1982); see also FTC v. Winsted Hosiery Co., 258 U.S. 483, 494 (1922) ("That a person is a wrongdoer who so furnishes another with the means of consummating a fraud has long been a part of the law of unfair competition."); Regina Corp. v. FTC, 322 F.2d 765, 768 (3d Cir.1963) ("One who places into the hands of another a means of consummating a fraud or competing unfairly in violation of the Federal Trade Commission Act is himself guilty of a violation of the Act.") (citation omitted); Waltham Watch Co. v. FTC, 318 F.2d 28, 32 (7th Cir.) (same), cert. denied, 375 U.S. 944 (1963). The district court correctly recognized that direct liability is appropriate on this basis; it is unnecessary, therefore, to consider aiding and abetting liability.
 
 V
 
 24
 Magui argues that Marcand may not be held personally liable under § 13(b) of the FTC Act for the acts of Magui, because he did not have requisite knowledge that Magui's acts were fraudulent or dishonest. The parties do not dispute that "the FTC must show that [an] individual defendant[ ] participated directly in the [illegal] practices or acts or had authority to control them." FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir.), cert. denied, 493 U.S. 954 (1989); cf. L.B. Indus., Inc. v. Smith, 817 F.2d 69, 71 (9th Cir.1987) (individual liability of corporate director for fraud requires control, participation, or knowing acquiescence). However, the FTC argues that knowledge is not a prerequisite for equitable restitution, and Magui contends that there was no evidence that Marcand knew his or Magui's acts were fraudulent or dishonest. We do not need to decide whether an individual defendant must have knowledge that corporate practices are fraudulent or dishonest, because even if knowledge must be shown, the district court found that Marcand had knowledge of the deceptive nature of his Dali marketing practices. That finding was not clearly erroneous in view of Marcand's control of Magui; Marcand's 1984 conviction in Italy for sale of counterfeit Dali lithographs; Marcand's entry into a 1986 consent judgment with the New York State Attorney General settling charges that his company had sold counterfeit Dali works; and the FTC proceedings against Magui customers. Based on that finding, the court correctly concluded that the standards for consumer redress against Marcand were met.
 
 VI
 
 25
 Magui also challenges the district court's restitution calculations as clearly erroneous.
 
 
 26
 * The district court based its estimates of Magui's costs on Magui's own business records. These findings are for this reason alone not clearly erroneous. Magui argues that the documents on which the district court relied reflected average costs assuming sale of all prints, and that actual average costs were much higher because not all prints were sold. However, Magui failed to substantiate Marcand's testimony that it actually incurred the inflated costs which it claims. Under these circumstances, there is no basis for upsetting the district court's findings.
 
 B
 
 27
 Magui argues that the district court miscalculated sales quantity by including foreign sales, unsold consignments, missing prints, and uncollected receivables. The FTC argues that it was not clearly erroneous for the district court to include such prints in calculating restitution. The FTC Act confers jurisdiction over foreign sales, and the 1982 amendment to § 5 of the Act upon which Magui relies to argue that this jurisdiction is limited applies to antitrust enforcement ("unfair methods of competition involving commerce with foreign nations")--not to the FTC's consumer protection jurisdiction. H.R.Rep. No. 686, 97th Cong., 2d Sess. 14, reprinted in 1982 U.S.C.C.A.N. 2487, 2499. Nor was it clearly erroneous to require disgorgement as to transfers designated as "gifts" or "consignments" as there is no evidence that sales were not thereby generated. In sum, the court's findings with respect to gross revenue and the amount of consumer injury were based on such evidence as there was, and we are not left with a firm conviction they are wrong.
 
 
 28
 AFFIRMED.
 
 
 
 *
 James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3